IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BNSF RAILWAY COMPANY, f/k/a THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY,<br><br>              Plaintiff,<br><br><br>        vs.<br><br><br>THE BOARD OF COUNTY COMMISSIONERS OF SUMNER COUNTY, KANSAS,<br><br>              Defendant. | Case No. 04-2395-JTM |

## MEMORANDUM AND ORDER

This matter comes before the court on the plaintiff's "Objection/Memorandum as to Defendant's Expert Witness Disclosure or, in the Alternative, First Motion in Limine" (Dkt. No. 24) and "First Motion in Limine or, in the Alternative, Motion to Strike Defendant's Expert Burnham" (Dkt. No. 29).  The parties dispute whether the defendant has adequately disclosed the expert witness testimony of Arnie Burnham in conformance with Federal Rule of Civil Procedure 26 and whether his testimony comports with the standard of Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993).  For the reasons set forth herein, the court denies plaintiff's "Objection/Memorandum as to Defendant's Expert Witness Disclosure" motion and grants in part and denies in part plaintiff's "Motion to Strike Defendant's Expert."

**I. BACKGROUND**

Plaintiff BNSF Railway Company (hereafter "BNSF") brought this action against the Board of County Commissioners of Sumner County, Kansas, for alleged negligence of defendant's employee Richard Sprout.  On September 4, 2002, plaintiff's freight train was approaching a railroad grade crossing in Sumner County, when it struck decedent's road grader. Mr. Sprout died as a result of the accident.  Plaintiff alleges that defendant and defendant's employee negligently operated the county's leased road grader in the path of plaintiff's train.

In preparation for trial, defendant seeks to introduce the testimony of Arnie Burnham. Defendant submitted a summary of the expert's findings in a report dated March 8, 2005.  Mr. Burnham's curriculum vitae indicates that he has college and post-graduate education.  He claims to have more than thirty years of experience in traffic engineering in both the public and private sector.  Relevant to this case, Mr. Burnham includes traffic accident reconstruction and sight distance requirements in his consultation capabilities.

Plaintiff presents its objections in two motions. In the first motion, plaintiff argues: 1.) that defendant may not submit a "preliminary" expert report; and 2.) that plaintiff's ability to bring a rebuttal expert witness is impeded without a complete and final report from Mr. Burnham.  In a second motion, plaintiff's arguments may be distilled to the following:  1.) that Mr. Burnham's testimony is not proper expert testimony and will not assist the trier of fact; 2.) that Mr. Burnham's testimony is not reliable and outside the scope of his professed expertise; and 3.) that federal legislation preempts Mr. Burnham's testimony regarding the hazardous condition of the crossing.

**II. DISCLOSURE OF EXPERT TESTIMONY**

Federal Rule of Civil Procedure 26 governs the disclosure of expert testimony.  It
provides in relevant part that a party must disclose any person whom it plans to use at trial to
present expert evidence.  Fed. R. Civ. P. 26(a)(2)(A).  The expert must submit a report that "shall
contain a complete statement of all opinions to be expressed and the basis and reasons therefor."
Fed. R. Civ. P. 26(a)(2)(B).  The rule requires that the expert include the data or other
information considered, any exhibits to be used as a summary of or support for the opinions,
qualifications of the expert, compensation paid and a listing of prior testimony.  Fed. R. Civ. P.
26(a)(2)(B).  The  report permits a party to "set forth the substance of the direct examination" of
the expert witness well in advance of the trial.  Schmitt v. Beverly Health and Rehabilitation
Services, Inc., No.Civ.A 96-2537-EEO, 1997 WL 728133, at *3 (D. Kan. Nov. 19, 1997) (citing
Robinson v. Missouri Pac. R.R., 16 F.3d 1083, 1089 n. 6 (10th Cir. 1994); Fed. R. Civ. P.
26(a)(2) advisory committee's note (1993 amend.)).

A party does not run afoul of Fed. R. Civ. P. 26(a)(2)(B) simply because he states that he
will later supplement his report.  Rather, the rules contemplate periodic supplementation,
providing for both an update of the information contained in the report and the information
provided through deposition of the expert testimony.  Fed. R. Civ. P. 26(e)(1); Majewski v.
Southland Corp., 170 F.R.D. 25, 26 (D. Kan. 1996).  These supplements are due as provided
under Fed. R. Civ. P. 26(a)(3).

The rules also include sanctions for insufficient disclosures.  Fed. R. Civ. P. 37(c)(1).
Where a party may have provided inadequate or untimely disclosure, the court may preclude that
witness from testifying as to specific opinions not previously disclosed in the report.  Fed. R.

Civ. P. 37(c)(1).  The court may also impose other sanctions it deems appropriate including reasonable expenses.  Fed. R. Civ. P. 37(c)(1).

In reviewing the expert report, the court finds that the defendant's expert disclosure comports with the requirements of Fed. R. Civ. P. 26(a)(2)(A).  The plaintiff has included the data reviewed, the observations made and preliminary set of opinions. The expert witness has also signed the report.  Mr. Burnham's curriculum vitae includes his education, writings, fee schedule and the names of cases in which he previously testified.  Unless defendant amends this disclosure as provided under the Federal Rules, the court will hold defendant to the scope of testimony presently disclosed.

The court, however, finds some of Mr. Burnham's observations problematic. In Observation No. 19, Mr. Burnham states "that there is no evidence that the bells and lights did operate properly on the approach of the subject train."  At present, such an observation is pure speculation because it is not based on sufficient facts or data.  Therefore, it must be excluded from the expert's testimony.  Fed. R. Evid. 702.  See also Gibson v. Norfolk Southern, 878 F. Supp. 1455, 1460  (N.D. Ala. 1994) (affirming a district court's striking of Mr. Burnham's expert testimony on whether warning lights and signals were working because the testimony was based solely on conjecture and speculation rather than competent evidence).  Similarly, in Observation No. 18, the court will not permit Mr. Burnham to testify on the status of the train whistle if there are no facts or data to support his findings.

Finally, the court does not find merit in BNSF's argument that defendant's disclosure has impeded BNSF's ability to bring a rebuttal expert.  Based on a the facts of this case and the preliminary opinion, counsel may readily anticipate the arguments he will encounter on direct

4

examination. The disclosures provide an adequate basis for cross examination and preparation of a rebuttal witness.

## III. DAUBERT REQUIREMENTS FOR EXPERT TESTIMONY

Federal Rule of Evidence 702 provides that an expert may testify to those opinions based upon sufficient facts or data and that are a product of reliable principles and methods applied to the facts of the case. Fed. R. Evid. 702. The trial judge serves as a gatekeeper inquiring into both the relevance and reliability of expert testimony. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 579-80, 113 S.Ct. 2786 (1993). Fed. R. Evid. 702 advisory committee's note (2000 amend.). As a gatekeeper, the court ensures "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152, 119 S.Ct. 1167 (1999).

To assess the reliability of testimony, the court reviews the non-exclusive checklist set forth in Daubert. The court inquires:

> 1) whether the expert's technique or theory can be or has been tested – that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; 2) whether the technique or theory has been subject to peer review and publication; 3) the known or potential rate of error of the technique or theory when applied; 4) the existence and maintenance of standards and controls; and 5) whether the technique or theory has been generally accepted in the scientific community.

Fed. R. Evid. 702. Kumho Tire Co v. Carmichael, 526 U.S. at 157, 119 S.Ct. 1167 (applying similar standards to non-scientific experts). The trial judge is given broad discretion in determining how to assess an expert's relevance and reliability. Kumho, 526 U.S. at 152, 119 S.Ct. 1167. The court may require special briefing or other proceedings to determine relevance

and reliability.  <u>Kumho</u>, 527 U.S. at 152, 119 S.Ct. 1167.  The court also has the discretion to determine when a reliability screening may be unnecessary in proceedings where the reliability of the expert's method is properly taken for granted.  <u>Kumho</u>, 572 U.S. at 152-153, 119 S.Ct. 1167.

**A. Mr. Burnham's Qualifications as an Expert**

Plaintiff first argues that Mr. Burnham is not qualified as an expert in the areas about which he proposes to testify and that he has no expertise in sociology, optics or audiology. However, plaintiff has not specified how a degree in sociology or a degree in the science of human behavior is necessary for the opinions Mr. Burnham has submitted.  Mr. Burnham's resume includes considerable background in development of traffic operations in Georgia.  He has published on traffic control devices, railroad crossings, and traffic engineering.  As an accident reconstructionist, Mr. Burnham may testify as to his calculation on the time the train crew had to react, how they did use the time based on the crew's testimony, and how they should have used this time.  Part and parcel of traffic safety is determining sight distances and the time in which warning devices may be heard.  Mr. Burnham's education and work experience adequately qualifies him for the issues to which he intends to testify.  His testimony is relevant, likely to assist the trier of fact, and states more than just lay observations.

**B. Reliability of Mr. Burnham's Expert Testimony under <u>Daubert</u>**

The next issue is that of reliability.  To assist the court in determining the reliability of the methods employed by Mr. Burnham, the court asks that defendant's counsel submit the underlying studies upon which Mr. Burnham relies.  If the data would be difficult for the court to decipher, the court recommends that counsel include a summary or explanation of the studies and how the expert incorporated the particular studies.  The court will review this material to

determine whether Mr. Burnham's methods comport with the standard established in <u>Daubert</u> and whether any part of Mr. Burnham's findings should be struck.  Since accident reconstruction is a relatively common type of expert testimony, the court does not anticipate the need for a more formal <u>Daubert</u> hearing at this time.

**C. Federal Preemption on Condition of Railway Safety Devices**

Finally, plaintiff raises the issue that federal legislation preempts Mr. Burnham's testimony regarding the hazardous condition of the crossing.  Here, the court finds that plaintiff has not adequately articulated its argument.  In <u>Norfolk Southern v. Shaklin</u>, 529 U.S. 344, 120 S.Ct. 1467 (2000), the Supreme Court reviewed whether federal statute pre-empted plaintiff's wrongful death action against the state for improperly maintaining railroad crossing signals. The Supreme Court ruled that plaintiff's action was preempted because the state transportation department had used federal funds for sign installation pursuant to the Federal Railway-Highway Crossing Program, 23 U.S.C. § 130 (hereafter "Crossings Program").  <u>Norfolk Southern</u>, 529 U.S. at 344, 120 S.Ct. 1467.

While BNSF argues that state of Kansas controls crossing protection devices, it has not shown that federal funds were used in this instance to make the ruling in <u>Norfolk Southern</u> applicable (or, in the alternative, that the state only uses federal funds to maintain railroad crossing safety devices).  For example, in <u>CSX Transportation, Inc. v. Easterwood</u>, 507 U.S. 658, 113 S.Ct. 1732 (1993), the Supreme Court found that the state tort claim was not pre-empted because the warning devices for which federal funds had been obtained were never actually installed at the crossing where the accident occurred.  <u>Norfolk Southern</u>, 529 U.S. at 352, 120 S.Ct. 1467.

In this case, Mr. Burnham's opinion states that the warning devices had been in place since July 1976.  Although Congress passed the relevant legislation in the early 1970s, it is not clear whether Kansas secured its funds from federal programs.  As a result, the court denies plaintiff's argument for federal preemption.  If counsel discovers evidence supporting federal preemption, the court is open to revisiting the issue.

IT IS ACCORDINGLY ORDERED this 12th  day of August 2005, that the court denies plaintiff's "Objection/Memorandum as to Defendant's Expert Witness Disclosure" (Dkt. No. 24) as set forth herein.

IT IS FURTHER ORDERED that the court grants in part and denies in part plaintiff's "First Motion in Limine or, in Alternative, Motion to Strike Defendant's Expert Burnham" (Dkt. No. 29) and requests further submissions on the expert's testimony as set forth herein.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE